IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

SHAWNA CALVERT,

    Plaintiff,

v.

HARBOR RETIREMENT ASSOCIATES, LLC; HARBOR NAPERVILLE MANAGEMENT, LLC

    Defendants.

Case No. 1:19-cv-04952

## FIRST AMENDED COMPLAINT

**TO THE HONORABLE COURT**:

Comes now Plaintiff, SHAWNA CALVERT, by and through her attorneys, GIAMANCO LAW PARTNERS, and herein submits her Complaint at Law against the Defendants, HARBOR RETIREMENT ASSOCIATES, LLC (hereinafter "HRA") and HARBOR NAPERVILLE MANAGEMENT, LLC (hereinafter "HRA NAPERVILLE"). Plaintiff Complains as follows:

## SUMMARY OF CLAIMS

1. This is an action for damages and equitable relief brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq.; the Civil Rights Act of 1964 ("Civil Right Act"), Title VII. Further, the facts set forth in the instant complaint constitute violations of Plaintiff's employment rights protected by Section 1 of the Fourteenth Amendment to the Constitution of the United States of America; and, are actionable under Title VII of the Civil Rights act of 1964, as amended (42 U.S.C. §2000e et. seq.), and Title I of the Civil Rights Act of 1991 (42 U.S.C. §1981a).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the federal claims based on federal question jurisdiction, 28 USC §1331, 1343 and 1363, inasmuch as it arises under 42 U.S.C. §2000e-5, 42 U.S.C. §1981a, 29 U.S.C. §206(d) and 29 U.S.C. §1132.

3. This Court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Plaintiff filed an EEOC complaint with the local EEOC office in Chicago, IL, alleging discrimination under ADEA on April 23, 2019 and a Notice of Right to Sue was issued on May 3, 2019.

## PARTIES

5. Plaintiff SHAWNA CALVERT is 48 years old and a resident of Bolingbrook, Illinois.

6. Defendants HRA and HRA NAPERVILLE are a senior living development and management company, focused primarily on assisted living and memory care communities with principal offices in Vero Beach, Florida and communities in eight (8) states, including Illinois. Defendants are co-employers of Plaintiff in this case.

## FACTUAL ALLEGATIONS

7. SHAWNA CALVERT started to work for the Defendants in February 27, 2018 as Director of Sales.

8. Plaintiff oversaw sales associates and provided them with support in scheduling

tours of HRA properties in Plainfield and Naperville for potential new clients and ultimately selling the property to these new clients.

9. Throughout her tenure with HRA and HRA NAPERVILLE, Plaintiff had a proven record of honesty, dedication and hard work. She received her supervisors' and executive-level associates' praise.

10. Due to her exemplary performance, Plaintiff was offered significant salary increases, the opportunity to work remotely as well as invitations to apply for enhanced career opportunities within her employer.

11. Plaintiff's compensation package included a $60,000 salary, plus commissions and amenities such as mileage reimbursement among others.

12. On or around October 20, 2018, Mark Hood joined HRA as Area Sales Manager and became Plaintiff's supervisor.

13. Shortly thereafter, Hood began unreasonably interfering with Plaintiff's work, affecting her performance and creating an intimidating and offensive work environment.

14. Plaintiff was subjected to disparaging remarks from Mark Hood regarding her gender and age. Mr. Hood also began a systematic elimination of women over 40 years old by terminating them and refusing to hire or promote any women over 40 years of age.

15. Plaintiff complained verbally and in writing to Defendants' Human Resources Department of Ms. Hood's conduct and informed company officials that her supervisor was creating a hostile work environment and that such conduct was unwelcomed, harmful and illegal.

16. Human Resources officials contacted Plaintiff over the phone to discuss her grievances but included Mr. Hood in the conversation. Plaintiff was fearful of Mr. Hood's reaction and thus, could not openly express herself during the conference call.

17. After learning that Plaintiff had complained to Human Resources, Mr. Hood's conduct worsened towards Plaintiff until she was terminated on January 9, 2019.

18. Upon learning that she had been terminated, Human Resources officials contacted Plaintiff and re-hired her on January 21, 2019.

19. On January 21, 2019, Mr. Hood met with Plaintiff upon her return to work. During that meeting, Mr. Hood informed Plaintiff that her position has changed and that she was being re-hired as a Lead Conversion Specialist. As such, her compensation package would also change. Plaintiff's salary decreased, her commission opportunity was eliminated, and the office equipment required for her job was removed. Furthermore, her primary work location was changed to a distant location with a four-hour commute and mileage reimbursement was also eliminated.

20. During that same meeting, Mr. Hood gave Plaintiff a Performance Correction Notice alleging Plaintiff had falsified a commission report back in November of 2019 and advising Plaintiff that any further violation of Defendants' policies will be grounds for termination. Prior to this, Plaintiff had never received a disciplinary reprimand of any kind.

21. Plaintiff continued to work under duress and subjected to Mr. Hood's disparaging remarks and hostile work environment on a daily basis. Plaintiff repeatedly informed Human Resources of Mr. Hood's conduct only to be brushed off with a promise of returning her calls.

22. Plaintiff offered proof to Human Resources to rebut Mr. Hood's notice of disciplinary action and issued written letters to Human Resources detailing the hostile work environment that she was being subjected to without any corrective action being taken by Defendants.

23. On February 3, 2019, Plaintiff was contacted telephonically by Mark Hood and

Human Resources to discuss her alleged "lack of performance and past history of dishonesty in the workplace". During the conference call Mr. Hood raised his voice, belittled Plaintiff and again threatened to terminate her from employment. The Human Resources official witnessed all of the above but did not interfere or participated in any way, just as a silent listener.

24. Plaintiff continued to work under these horrible conditions until February 8, 2019 when she was terminated from her employment.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
## AGE DISCRIMINATION UNDER ADEA

25. Plaintiff incorporates the preceding paragraphs as alleged above.

26. Defendants terminated Plaintiff's employment even though she performed her job at a level that met and exceeded her employer's expectations.

27. Plaintiff was forty-eight years old (48) when Defendant terminated her employment.

28. Plaintiff has filed a timely charge with the EEOC and has thus exhausted her administrative remedies.

29. But for Defendants motive to discriminate against Plaintiff because of her age, Plaintiff would not have been discharged and deprived of the benefits of her employment.

30. Defendants discrimination against Plaintiff based on age was willful.

31. As a direct consequence of the discriminatory conduct of Defendants, Plaintiff has suffered past and future lost wages and benefits Moreover, Plaintiff is entitled to liquidate damages pursuant to 29 U.S.C. §626(b) and costs and attorney fees for this action pursuant to 29 USC §626 (b).

## SECOND CLAIM FOR RELIEF
## SEX-BASED DISCRIMINATION UNDER TITLE VII

32. Plaintiff incorporated the preceding paragraphs as alleged above.

33. Plaintiff has filed a timely charge with the EEOC and has thus exhausted her administrative remedies.

34. The Defendants intentionally discriminated against Plaintiff on the basis of sex.

35. But for Defendants' motive to discriminate against Plaintiff because of her sex, Plaintiff would not have been discharged and deprived of the benefits of her employment.

36. As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

a. An order restoring Plaintiff to her rightful positions at HRA and HRA NAPERVILLE (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

b. Back pay (including interest and benefits) for Plaintiff

c. All damages sustained by Plaintiff as a result of Defendants' conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

d. Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

e. Costs incurred herein, including reasonable attorneys' fees to the extent

allowable by law;

    f.  Pre-judgment and post-judgment interest, as provided by law; and

    g.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

  37.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

                Respectfully submitted,

Dated: August 19, 2019        s/ Melisa Quinones
                   Attorney No. 6329075
                   melisa@glawpartners.com

                   Attorneys for Plaintiff Shawna Calvert
                   GIAMANCO LAW PARTNERS
                   340 Quadrangle Drive – Suite A
                   Bolingbrook, IL 60440
                   (t) 630-635-5555
                   Email Service of documents:
                   attorney@glawpartners.com

            CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 19, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                 s/ Melisa Quinones